**M. V. BURKE, Administrator of Icy Mae Burke, Appellant,**

**v.**

**MINERS MEMORIAL HOSPITAL ASSOCIATION, Inc., et al., Appellees.**

Court of Appeals of Kentucky.

May 29, 1964.

Rehearing Denied Oct. 2, 1964.

C. W. Napier, Jr., Hazard, Robert .T. Winston, Jr., Norton, Va., for appellant.

Grant F. Knuckles, Pineville, Emmett G. Fields, Whitesburg, for appellees.

MILLIKEN, Chief Justice.

This is an appeal from a judgment entered upon a verdict directed for the defendants at the close of the plaintiff's testimony in an action brought by M. V. Burke, appellant-administrator, against the Miners Memorial Hospital Association, Inc., and two physicians whose alleged negligence caused the death of his wife, Icy Mae Burke, a woman forty years of age.

About a year before her death Icy Mae Burke had been treated and hospitalized by Dr. E. E. Musgrave for pains in her arm, shoulder and chest and for shortness of breath, and told to lessen her physical activities. On June 14, 1960, she had a recurrence of her trouble and her husband, the appellant herein as administrator of her estate, took his ailing wife to see Dr. Musgrave who happened to be away and as a result they consulted Dr. Loyd Pendergrass of Jenkins and sketched for him a history of her illness. Lacking technical equipment to examine her heart thoroughly, Dr. Pendergrass prescribed medicine and requested Mr. Burke to bring his wife back the next day at 11:00 a. m. Later in the day (June 14) Mrs. Burke's symptoms became so severe that her daughter took her to Sharon Heights Hospital in Jenkins where she was examined by Dr. Haynes who referred her to the Miners Memorial Hospital at Whitesburg where she was seen later that day by defendant-appellee Dr. Harry Caldwell, who gave her an appointment card for July 29, some one and a half months later, so that she would not have to wait in line to be examined at that time. There is no evidence whatsoever that Dr. Caldwell was given a history of her condition or what he told her.

On the next day, June 15, her condition had not improved and her husband took her back to see Dr. Pendergrass who gave her a referral slip for Dr. Caldwell at the Miners Memorial Hospital and told her to report there prepared to stay. Late the next afternoon her daughter took her to the hospital as directed, Dr. Caldwell was absent, and the defendant-appellee Dr. Bennett on his return from dinner, worked Mrs. Burke into his appointment schedule for the evening, examined her and gave her a prescription—one which was never filled, for she died at her home about 2:30 that night, the morning of the 17th. Again, we have no evidence to show that Dr. Bennett was informed of her medical history or had

any fair opportunity to examine her thoroughly.

An autopsy performed shortly after her death disclosed a hardening of the arteries of the heart, a necrosis of a heart muscle which probably was a long time developing, and an apparently severe hardening of one of the arteries to the brain. The pathologist commented that the "clinical findings and the autopsy findings were not quite in keeping with a diagnosis of coronary heart disease * * * she had a blood pressure of 130/100, which is rather unusual in a patient who is affected with coronary heart, or coronary artery disease."

The only other testimony offered to support the claim, elicited largely by a dubiously framed hypothetical question, was that of Dr. Musgrave who had treated the deceased for heart trouble the year before her death, and the testimony of Dr. B. F. Wright who gave his professional opinion. Both of these physicians were critical of the treatment accorded Mrs. Burke in the face of the symptoms she displayed and opined that she might have survived had she received proper medical treatment for her condition. However, both physicians admitted that there was no way they could conclude that Mrs. Burke would have survived had she had the treatment they recommended and neither would say that her failure to get it was the cause of her death.

If we assume arguendo that the evidence offered establishes negligence, there is still no evidence that that negligence was the proximate cause of the death. The autopsy disclosed the deterioration of the patient's arteries, a condition so serious that death might have occurred regardless of the treatment given. But the evidence of negligence itself is unconvincing for, as Dr. Musgrave testified, " * * * Let's say there is no one sign that can be associated with heart disease and nothing else." He further observed, "The human doesn't respond to disease the same way, and that's why we don't have science in medicine. We have art in medicine."

In the present case, the absence of any evidence of the defendants-appellees having any information as to the medical history of the patient, the cursory opportunity to examine her afforded them, the admitted difficulty of diagnosing from symptoms alone, and the complete failure to establish that the treatment or lack of treatment accorded her was the cause of her death, convince us that the trial court properly directed a verdict for the defendants.

The judgment is affirmed.